**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Leon, | No. CV-17-00731-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Monica Leon seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence, the Commissioner's decision will be vacated and the matter remanded for an award of benefits.

**I.  Background.**

On August 22, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning August 1, 2013 (amended). On October 1, 2015, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On December 14, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

decision the Commissioner's final decision.

**II.     Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the

claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since November 22, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, rheumatoid arthritis, and fibromyalgia. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except with the following additional limitations: The claimant is capable of occasional fingering and feeling, bilaterally.

The ALJ further found that Plaintiff is able to perform her past relevant work as a receptionist.

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in rejecting the medical assessments of Ramina Jajoo. M.D. and Occupational Therapist Ty J. Pehrson, and (2) the ALJ erred in rejecting Plaintiff's symptom testimony. The Court will address each argument below.

## A. Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Ramina Jajoo, M.D. and Ty J. Pehrson, Occupational Therapist. The Court will address the ALJ's treatment of each opinion below.

### 1. Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

## 2. Ramina Jajoo, M.D.

Dr. Jajoo has been treating Plaintiff since November 11, 2013. (AR 353-56.) In Plaintiff's first visit, Dr. Jajoo reported Plaintiff had "aggressive and erosive" rheumatoid arthritis ("RA"). (AR 355.) Dr. Jajoo's description of Plaintiff's RA on May 20, 2015 is consistent; "[Plaintiff] has quite a bit of swelling so [physician needs] to be aggressive in treating [Plaintiff's] RA." (AR 482.) Dr. Jajoo further reported that "18 of 18 tenderpoints consistent with fibromyalgia [were] present." (AR 481.) On August 18, 2015, Dr. Jajoo discontinued two of Plaintiff's medications; "Methotraxate," due to "too much nausea and vomiting," and "Arava," because Plaintiff was "too dizzy [and] couldn't drive." (AR 502.) Subsequently, Plaintiff started "Orencia" treatments and reported that "the pain has come down a little bit." (*Id.*) Dr. Jajoo referred Plaintiff to Occupational Therapist, Ty Pehrson. (AR 366.) After receiving Perhson's report, Dr. Jajoo opined that Plaintiff has the following limitations: during an eight-hour workday, Plaintiff is capable of sitting for two hours, standing or walking for less than two hours, and can lift or carry less than ten pounds. (AR 508-09.)

Dr. Jajoo's opinion is contradicted by the opinions of State agency medical consultants, Walter W. Bell, M.D. and Charles Clayton, M.D. (AR 66-87) who opine that Plaintiff has greater abilities than those identified in Dr. Jajoo's opinion. (AR 66-87, 508.) Accordingly, the ALJ could discount Dr. Jajoo's opinion for specific and legitimate reasons supported by substantial evidence. *Lester,* 81 F.3d at 821. Ultimately, the ALJ gave no weight to Dr. Jajoo's opinion stating that it was inconsistent with Dr. Jajoo's own clinical findings and with State agency medical consultant opinions. (AR 26.)

### a. Inconsistent With Her Own Clinical Findings.

The ALJ 's first reason for discounting Dr. Jajoo's opinion is that it is inconsistent with Dr. Jajoo's own clinical findings. (AR 26.) "An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, [] or by objective medical findings[.]" *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The Court finds that the ALJ's first reason is not specific or legitimate.

In her opinion, the ALJ states that she gives "no weight" to Dr. Jajoo's opinion because despite indicating Plaintiff can sit, stand and walk for two hours or less during an eight-hour workday, Dr. Jajoo notes Plaintiff's pain has reduced "a little bit" since starting the "Orencia" medication. (AR 26.) Furthermore, although the onset of Plaintiff's symptoms was "years ago," Plaintiff only recently sought treatment. (*Id.*) The ALJ fails to explain how a slight reduction in Plaintiff's pain is inconsistent with Dr. Jajoo's report that Plaintiff is incapable of working consistently throughout an eight-hour workday. *See Lester*, 81 F.3d at 833 ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."); *Torres v. Colvin*, 2017 WL 1437584, at *11 (D. Ariz. Apr. 24, 2017) (Treatment that is effective in providing some relief, but not complete, is not substantial evidence to discount testimony). Accordingly, the Court finds that the ALJ has failed to provide specific and legitimate reasons that Dr. Jajoo was inconsistent with her own medical findings and thus should be discounted.

### b. Inconsistent With Findings of Medical Consultants.

The Commissioner asserts that the ALJ also provides a second reason for discounting Dr. Jajoo's opinion. Specifically, the Commissioner argues Dr. Jajoo's opinion was inconsistent with the opinions of State agency medical consultants Walter W. Bell, M.D., and Charles Clayton, M.D. (AR 25-26, 66-87; Doc. 27 at 14.) The Court fails to find exactly where in the ALJ's decision this reason is provided. At best, the ALJ implies that the medical consultants' opinions were considered in her consideration of Dr. Jajoo's opinion. (AR 25.) But, to the extent the ALJ relied on this reasoning, the Court finds it is not legitimate. A "nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the treating doctor's . . . opinion." *Lester,* 81 F.3d at 833. Because the ALJ fails to provide any reasoning beyond stating the opinion of the consulting doctors, the Court finds that this reason to discount Dr. Jajoo's opinion is not legitimate.

### 3. Ty J. Pehrson, Occupational Therapist.

Dr. Jajoo referred Plaintiff to be examined by Ty J. Perhson, Occupational

Therapist. (AR 366.) On May 5, 2014, Pehrson conducted a "Medical Assessment of Ability to do Work-Related Physical Activities" on Plaintiff. (AR 361-62.) Pehrson noted that Plaintiff "displayed pain and discomfort during lifting tasks as evidenced by facial grimacing and abnormal body mechanics." (AR 363.) Plaintiff also "terminated the lifting task at 10 pounds due to pain and discomfort." (*Id.*) In his assessment, Pehrson concluded that Plaintiff could, in an eight-hour workday, sit for two hours, stand/walk for less than two hours, lift and carry less than ten pounds, and that pain and fatigue would cause Plaintiff to be off task between 16 and 20 percent of the workday. (AR 361-62.) Perhson further reported that it is medically necessary for the Plaintiff to alternate positions every 1-20 minutes and rest for 10-15 minutes with position changes. (AR 361.)

The ALJ afforded Pehrson's opinion "no weight." (AR 26.) In her decision, the ALJ provides two reasons for discounting Pehrson's opinion: (1) conservative treatment: "the course of treatment the plaintiff received was not what would be expected given a limitation to sit less than [two] hours, and miss [six] days of work per month and have to alternate positions every 20 minutes," and (2) "there are no explanations as to the extreme restrictions opined by Mr. Pehrson." (*Id.*)

### a. Conservative Treatment.

The ALJ found that "the course of treatment the [Plaintiff] received was not what would be expected" given the limitations that Pehrson reported. (AR 26.) But the ALJ provides no explanation for this conclusion and does not identify which condition was insufficiently treated. Pehrson conducted a single evaluation of Plaintiff, but the medical record shows her treatment to be anything but conservative. Plaintiff has been prescribed several different medications (AR 46-48, 261), underwent intravenous infusions (AR 47-48, 478), and has participated in a medical trial (AR 385-475). The ALJ states that Plaintiff had not received physical therapy treatment but provides no explanation as to why that fact renders Plaintiff's other treatment inadequate. (AR 24.) Because the ALJ does not explain why the extensive pain-management treatments Plaintiff did receive were insufficient to support Pehrson's opinions, the Court concludes the ALJ's reason for discounting

Pehrson's medical opinion is not legitimate.

### b. Conclusory Opinion.

The ALJ also asserts "[t]here are no explanations as to the extreme restrictions opined by Mr. Pehrson" (AR 26), which implies that Pehrson's statements are conclusory or unsupported by evidence. "In a social security disability proceeding, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004). Here, Pehrson attached a five-page report to his check-box form that assesses Plaintiff's dexterity and ability to lift different weights, explaining the rationale for his limitation findings. (AR 363-67.) The ALJ ignores this substantive explanation. (AR 26.) Accordingly, the Court finds the ALJ's second reason for discounting Perhson's medical opinion is not legitimate.

## B. The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 24.) Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. (*Id.*) In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

### 1. Plaintiff's Symptom Testimony.

At the hearing the Plaintiff testified to the following facts. (AR 39-58.) Plaintiff last

worked in 2010 for an agency that sold insurance. (AR 43.) Plaintiff's previous employment history is primarily sedentary office work. (AR 43-45.) Plaintiff testified that her RA and fibromyalgia interfere with her ability to work. (AR 46.) Plaintiff sees Dr. Jajoo, her rheumatologist, regularly and Plaintiff has been prescribed medications. (*Id.*) Plaintiff reported that "Methotraxate" gave her side effects such as hair loss, vomiting, and nausea. (AR 47.) Plaintiff reported that another medication, "Arava," made her dizzy and unable to drive. (*Id.*; AR 502.) Plaintiff testified she now receives infusions of Orencia for RA[1] and Gabapentin for fibromyalgia. (AR 47-48.) Plaintiff has not been treated with physical therapy. (AR 49.) Plaintiff agreed the medication helps to relieve her pain but has not given her significant relief. (AR 55, 58.)

Plaintiff asserts that she has "pain through [her] whole body" and four times a week it is "really bad pain." (AR 50.) Plaintiff rates her pain at seven or seven and a half out of ten on a typical day. (AR 55.) Plaintiff takes naps and has to lie down, sit, and put her feet in hot and cold water to relieve her pain. (AR 50-51.) Plaintiff asserts she can sit for between 30 minutes and an hour and can stand for 30 minutes. (AR 51) Plaintiff states she "[does not] take walks because her legs hurt" but can walk "maybe a block." (*Id.*) Plaintiff can lift a gallon of milk. (*Id.*)

Plaintiff lives with her husband. (AR 40.) Around the house, Plaintiff makes the bed every day, washes dishes if her hands do not hurt, and prepares simple meals three or four times per week. (AR 51.) Plaintiff states she can help around the house for 30 minutes to one hour before needing a break. (AR 56-57.) Plaintiff goes grocery shopping alone or with her husband and drives two to three times per week. (AR 51, 40.)

### 2. ALJ's Reasons for Discounting Plaintiff's Testimony.

In her decision, the ALJ states five reasons for finding Plaintiff's testimony not fully credible: (1) "[t]he [Plaintiff] stopped work for reasons unrelated to her alleged

---

[1] Shots are not considered conservative medical treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (finding "[the court] doubt[s] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding "epidural injections in [plaintiff's] neck and back, as well as steroid injections in [plaintiff's] hands" was not conservative treatment).

- 9 -

impairment"; (2) "[t]here are significant gaps in [Plaintiff's] treatment history"; (3) Plaintiff exaggerated pain and side effects; (4) there is "significant inconsistent evidence in the record regarding [Plaintiff's] work activity after the alleged onset date"; and (5) Plaintiff's symptom allegations are inconsistent with objective medical findings. (AR 25.)

### a. Stopped Work for Reasons Unrelated to Impairment.

First, the ALJ asserts that Plaintiff's testimony lacks credibility because she "stopped work for reasons unrelated to her alleged impairment." (AR 25.) Plaintiff reported she was laid off on November 20, 2010, but asserts that her condition was severe enough at that time to keep her from working from that date onward. (AR 183.) On October 1, 2015, Plaintiff amended her onset date to August 1, 2013. (AR 19.)

Courts are divided on whether stopping work for a reason other than disability weighs against credibility. Some courts have found that being laid off from work for a reason other than disability weighs against a claimant's credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that testimony that plaintiff "left his job because he was laid off, rather than because he was injured" was a "sufficient reason[] for disregarding pain testimony."); *Rios v. Barnhart*, 215 F. App'x 681, 684 (9th Cir. 2006) (finding ALJ's actions "appropriate" in "discount[ing] [plaintiff's] subjective complaints based on her testimony that she stopped working because she was laid off— and not because of her physical limitations."). However, more recently, courts have found that a gap between being laid off and the date of disability onset does not weigh against a claimant's credibility. *See Haagenson v. Colvin*, 656 F. App'x 800, 801 (9th Cir. 2016) (holding that "the evidence that [plaintiff] was laid off from her last job . . . —prior to her alleged onset date . . . —has no bearing on either her credibility or the disability determination."); *Harbaugh v. Comm'r of Soc. Sec. Admin.*, 2018 WL 1472005, at *4 (D. Ariz. Mar. 26, 2018) (finding "the fact that [p]laintiff was laid off . . . has no relevance to [p]laintiff's credibility in this instance. Plaintiff was laid off . . . three years before her alleged onset date."). Here, Plaintiff was laid off for reasons other than her disability. (AR

19, 183) But, she was laid off three years before her amended alleged disability onset date. (*Id.*) Because Plaintiff's disability onset date is a significant time after the date she was laid off, it should not weigh against her credibility.[2] Accordingly, the Court finds the ALJ's reasoning to discredit Plaintiff's testimony is not clear and convincing on this factor.

### b. Significant Gaps in Plaintiff's Treatment History.

Second, the ALJ asserts Plaintiff's testimony lacks credibility because of significant gaps in treatment history despite alleging "severe and disabling" symptoms. (AR 25.) The record shows that Plaintiff did not seek treatment between 2010 and 2013 due to a lapse in health insurance. (AR 24.) But "where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so." *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding plaintiff's failure to seek treatment "is not a clear and convincing reason to discredit her symptom testimony" because she "had no insurance and could not afford treatment"). Although Plaintiff failed to seek treatment between 2010 and 2013 due to lack of insurance (AR 24), she later amended the onset date of her disability to the date her insurance was reinstated. (AR 19; Doc. 21 at 2.) Since obtaining insurance in August 2013, Plaintiff has consistently sought medical treatment and taken prescription medication. (AR 46.) Accordingly, the Court finds the ALJ's second reason for discounting Plaintiff's testimony is not clear and convincing and should not weigh against Plaintiff's credibility.

### c. Exaggerated Pain and Side Effects.

The ALJ's third reason for discounting Plaintiff's symptom testimony is that Plaintiff exaggerated her pain during a November 2014 urgent care visit. (AR 25.) At that visit, the doctor reported "patient's degree of pain is out of proportion to the injuries." (AR 494.) "In assessing claim for social security disability insurance benefits, ALJ cannot reject claimant's subjective pain or symptom testimony simply because alleged severity of pain

---

[2] In *Bruton*, the claimant alleged his disability onset date was the same date as he was laid off for reasons other than disability. *Bruton*, 268 F.3d at 828. The court found this to weigh against claimant's credibility. *Id.* But, in *Harbaugh*, the claimant's disability onset date was three years after she was laid off from work. *Harbaugh*, 2018 WL 1472005, at *4. The court found that being laid off for a reason other than disability has no relevance to a claimant's credibility if the onset of their disability was three years later. *Id.*

or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007). The ALJ should use specific evidence to support an allegation of excess pain such as an inconsistency with Plaintiff's daily activities, failure to follow a prescribed course of treatment, or receiving minimal conservative treatment. *Fair v. Bowen*, 885 F.2d 597, 601-04 (9th Cir. 1989). Here, the ALJ fails to use specific evidence from the record to support their allegation of excess pain. The ALJ also states that Plaintiff's claim of "adverse side effects from her medication" is contradicted by the record, which "indicates the side effects were mild and would not have interfered with [Plaintiff's] ability to perform work related activity." (*Id.*) The Court finds the ALJ failed to provide specific clear and convincing evidence from the record to support their assertion that Plaintiff's side effects were mild.[3] Accordingly, the Court finds the ALJ did not provide clear and convincing evidence to support their assertion that Plaintiff's subjective pain testimony was not credible.

### d. Inconsistent Record of Plaintiff's Work Activity.

Fourth, the ALJ found Plaintiff's symptom testimony lacks credibility because of "inconsistent evidence in the record regarding the [Plaintiff's] work activity after the alleged onset date." (AR 25.) "Assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017). The Court finds the ALJ's reason for questioning Plaintiff's credibility because of inconsistent work history is erroneous.

### e. Inconsistency With Objective Medical Findings.

Lastly, the ALJ rejects Plaintiff's symptom allegations because they are inconsistent

---

[3] The Commissioner asserts that Plaintiff claimed she has bad side effects from "Prednisone" that made her feel as though "the whole room was moving," but Plaintiff continued the medication without complaint. (Doc. 27 at 7.) The Commissioner appears to have mistaken the medication that Plaintiff complained of to be Prednisone when it was Arava, a medication the Plaintiff stopped taking at her doctor's instruction. (*Id.*; AR 502.)

with objective medical findings that indicate Plaintiff's muscle "strength, tone and reflexes . . . were grossly 'normal.'" (AR 25; Doc. 27 at 8.) This reasoning shows a misunderstanding of fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017). "[Fibromyalgia] is diagnosed entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Accordingly, the ALJ erred in her reasoning for questioning the Plaintiff's symptom testimony credibility.

**C.  Remand.**

Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1041, *Orn*, 495 F.3d at 640, *Benecke*, 379 F.3d at 595, and *Smolen*, 80 F.3d at 1292.). There is "flexibility" that allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

In this instance, the first factor is satisfied. The record is fully developed with frequent medical visits from 2013 to 2015, as well as additional medical records dating back to 2009. It contains functional capacity assessments from treating providers and two non-examining State agency medical consultants. It includes the Plaintiff's testimony and the VE's opinion that an individual with Plaintiff's alleged symptoms would be unable to work.

- 13 -

The second factor is also clearly satisfied. The Court has found the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the medical opinions of Dr. Jajoo and Occupational Therapist Ty Perhson.

The third factor is also satisfied. At the hearing the vocational expert testified that an individual with the same limitations reported by the Plaintiff, Pehrson, and Dr. Jajoo, would be unable to work. (Doc. 21 at 9; AR 63.) Crediting Plaintiff's testimony and the medical opinions of Dr. Jajoo and Pehrson as true, the ALJ would be required to find Plaintiff disabled on remand. Further, the Court has conducted an exhaustive review of the record, and finds that it does not raise serious doubt about whether Plaintiff is disabled.

The Commissioner argues that Plaintiff has not satisfied the requirements of the credit-as-true rule and asserts the Court should not remand for benefits. (Doc. 27 at 15-16.) Specifically, the Commissioner contends that Plaintiff's testimony and the opinions from Dr. Jajoo and Pehrson "are contradicted by the record evidence," and that "the record includes evidence casting serious doubt about Plaintiff's alleged disability." (*Id.* at 16.) The Court disagrees. The Court has determined that the ALJ failed to provide sufficient reasons to discount either the Plaintiff's testimony, or the opinions of Perhson and Dr. Jajoo. Further, the Court finds the record is fully developed and does not raise serious doubt as to Plaintiff's alleged disability. *See, e.g.*, *Revels*, 874 F.3d at 669 (Finding no serious doubt that plaintiff was disabled because "[plaintiff's] testimony, her function reports, and the treatment notes from her doctors consistently show that she was suffering from severe pain.").

Accordingly, the Court will remand this case for the calculation and an award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is

///

///

///

///

1 | **vacated** and this case is **remanded** for an award of benefits.

Dated this 22nd day of June, 2018.

_____
Honorable John Z. Boyle
United States Magistrate Judge